**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

WILLIAM B. ROBERTS,

Plaintiff,

v.                                                          CAUSE NO.: 4:25-CV-32-TLS

FRANK BISIGNANO, Commissioner of the
Social Security Administration,

Defendant.

## OPINION AND ORDER

The Plaintiff William B. Roberts seeks review of the final decision of the Commissioner
of the Social Security Administration denying his applications for disability insurance benefits
and supplemental security income. The Plaintiff argues that the Administrative Law Judge (ALJ)
erred in formulating the RFC because she failed to properly weigh the opinion of the state
agency reviewing physician and failed to call a medical expert. For the reasons below, the Court
finds that reversal and remand for further proceedings is required.

## PROCEDURAL BACKGROUND

On October 15, 2020, the Plaintiff filed applications for disability insurance benefits and
supplemental security income, alleging disability beginning on October 23, 2019. AR 155, ECF
No. 5. After the claims were denied initially and on reconsideration, the Plaintiff requested a
hearing, which was held before an ALJ on April 6, 2023. *Id*. On April 26, 2023, the ALJ issued a
written decision, finding the Plaintiff not disabled. AR 155–70. The ALJ found the state agency
reviewing physician Dr. Brill's RFC assessment for light work persuasive but nevertheless gave
the Plaintiff an RFC for medium work. AR 161, 166–67. The Appeals Council remanded,
directing the ALJ to further consider the Plaintiff's maximum residual functional capacity,

especially regarding evaluation of the prior administrative medical findings. AR 178–79. On remand, a different ALJ held a hearing on November 4, 2024. AR 17, 179. On November 18, 2024, the ALJ issued a written decision, finding the Plaintiff not disabled. AR 17–26. The Appeals Council subsequently denied the Plaintiff's request for review. AR 1–3. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). On May 7, 2025, the Plaintiff filed his Complaint [ECF No. 1] in this Court, seeking judicial review under 42 U.S.C. § 405(g). The Plaintiff filed an opening brief, the Commissioner filed a response brief, and the Plaintiff filed a reply brief. ECF Nos. 16, 24, 29.

### THE ALJ'S DECISION

For purposes of disability insurance benefits and supplemental security income, a claimant is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505(a).[1] To be found disabled, a claimant must have a severe physical or mental impairment that prevents him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see* 20 C.F.R. § 404.1512.

---

[1] The Court cites the disability insurance benefits statutes and regulations, which are largely identical to those applicable to supplemental security income. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since October 23, 2019, the alleged onset date. AR 19.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of left clavicle fracture and hypertension. AR 20.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings [in appendix 1 to subpart P of part 404 of this chapter]." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that she considered musculoskeletal listings under 1.00, respiratory listings under 3.00, and cardiovascular listings under 4.00. AR 21.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: frequent reaching in all directions with the non-dominant left upper extremity; occasional climbing of ladders, ropes, and scaffolds; and frequent . . . climbing ramps and stairs.

AR 21.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff has no past relevant work. AR 25.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because the Plaintiff can perform significant jobs in the national economy of hospital housekeeper, groundskeeper, and counter supply worker. AR 25–26.

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex*

*rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (citations omitted); *see Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (cleaned up). "[I]f the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

On appeal, the Plaintiff argues that the RFC for medium work was not supported by substantial evidence because the ALJ did not properly evaluate the state agency reviewing physician's RFC for light work and, having created an evidentiary deficit by rejecting that opinion, erred by failing to obtain a medical opinion to support her RFC finding. As the Plaintiff argues and the Defendant does not dispute, whether the Plaintiff can perform medium work is dispositive of disability in this case. At the time of application, the Plaintiff was fifty-nine years old, which is "advanced age" status, and moved into the "closely approaching retirement age" status when he turned sixty years old; had a general equivalency diploma received in the military; and had past work in the medium to heavy range. Thus, the Plaintiff asserts that he if were limited to light or sedentary work, he would be considered presumptively disabled under

Medical-Vocational Guidelines Rule 202.01, 202.02, or 202.04 based on the ALJ's finding of no past relevant work. *See* 20 C.F.R. § 404, Subpt. P, App. 2, Sec. 202.00, Table 2.

The Court begins with the Plaintiff's relevant medical history. The Plaintiff was seen on March 25, 2019, for his hypertensive disorder among other things, reporting frequent or severe headaches, and his blood pressure medication was adjusted. AR 886–87. On October 2 and 4, 2019, he was seen for high blood pressure, reporting visual disturbances, frontal headache, and numbness in his bilateral upper extremities, and testing was ordered. AR 880–83.

The Plaintiff had a hernia repair in December 2019. AR 819–35. A preoperative chest x-ray showed COPD. AR 692. After the surgery, he was released to return to work with lifting restrictions. AR 985.

On March 5, 2020, the Plaintiff fell and fractured his left clavicle. AR 791, 793, 844. Conservative treatment was recommended, but x-rays in March and April 2020 showed no change to the fracture. AR 848, 853. A June 2020 scan revealed re-demonstration of the displaced left clavicle fracture without evidence of significant bony bridging. AR 864. Because the fracture was not healing, the Plaintiff was referred to a specialist, who performed an open reduction left clavicle repair on August 5, 2020. AR 864, 1050–84. At a visit on August 21, 2020, the surgeon noted the incision had healed, and the Plaintiff had passive range of motion intact to abduction of 90 degrees. AR 1046. In October 2020, the surgeon observed palpatory clicking over the clavicle but satisfactory range of motion, and updated imaging showed good alignment. AR 1141. The Plaintiff was not to perform strength or weightbearing with the arm but was allowed to perform range of motion exercises; Tramadol was prescribed for pain. *Id.* A March 2021 CT scan showed possible persistent fracture. AR 1228.

On July 7, 2021, the Plaintiff suffered a stroke affecting his left side. AR 1160, 1164. At a follow up with primary care on July 15, 2021, his physician noted hypertensive disorder, COPD, and left arm and leg paresthesia with weakness. AR 1207. He also had tenderness and limited range of motion in the left shoulder. *Id.* His doctor assessed cerebral infarction unspecified, pain of the left shoulder joint, tobacco use, and COPD. AR 1207–08. Testing on October 26, 2021, ordered by his cardiologist showed no hemodynamically significant carotid artery stenosis by flow velocity analysis but bilateral calcific plaguing. AR 1229. At a follow up with the cardiologist on November 9, 2021, the Plaintiff complained of fatigue on exertion for a few months and had high blood pressure. AR 1253. His medication was adjusted. *Id.* At a primary care visit on November 19, 2021, the Plaintiff had high blood pressure and complained of related headaches and tingling in both hands. AR 1285.

At a visit with primary care in March 2022, the Plaintiff's relevant chronic medical issues were cerebrovascular accident, hypertensive disorder, and left shoulder pain, and pain medication for the left shoulder was continued. AR 1280–84. At a follow up in June 2022 for an unrelated issue, the Plaintiff complained of chronic left shoulder pain and hydrocodone was continued. AR 1273, 1275. At a follow up in August 2022 for his left shoulder and medication, the Plaintiff complained of being "tired in his hips," needing to sit down, and being short of breath when he walked. AR 1268. Hydrocodone was refilled. AR 1271. His physician noted "limited ambulation" on examination. *Id.* A bilateral lower extremity arterial doppler study in September 2022 due to leg pain and peripheral arterial disease showed mildly decreased right posterior tibial brachial index of .89. AR 1297–98.

At a follow up in October 2022 for a medication refill, the diagnoses were hypertensive disorder and chronic back pain, the doctor noted limited ambulation, and the blood pressure and

pain medications were continued. AR 1266. At a January 2023 visit, the Plaintiff was evaluated for chronic pain, hypertensive disorder, and COPD, and the doctor noted limited ambulation. AR 1261–62. Under history of present illness, the doctor noted that "he does flooring and he gets lots of back pain carrying heavy carpets." AR 1261. A February 2023 chest CT showed emphysema and extensive coronary artery calcification. AR 1296–97.

On June 1, 2023, the Plaintiff was admitted to the hospital for two days of low blood pressure and lightheadedness, worse with standing and walking. AR 1346. On discharge two days later, an assessment noted septal wall motion abnormality from a prior study, and the cause of illness was suspected to be dehydration from blood pressure medication and drinking tea and beer. AR 1347. At a follow up in June 2023, concerns remained about him getting dizzy and disoriented with low blood pressure. AR 1313. The Plaintiff was seen on September 21, 2023, for medication refills; was reviewed for hypertensive disorder, cerebral vascular accident, low blood pressure, and COPD; was assessed with chronic back pain; and had his medications refilled. AR 1311. The Plaintiff was seen in December 2023 for an acute exacerbation of his COPD. AR 1308.

The Court now turns to the ALJ's finding that state agency reviewing physician Dr. Brill's assessment of an RFC for light work with some postural limitations was not persuasive. The Plaintiff contends that the ALJ's minimal rationale in support misrepresents the facts and evidence and fails to properly address the factors of supportability and consistency. The Plaintiff argues that the evidence of record is consistent with the limitations of light work opined by Dr. Brill and inconsistent with the limitations of medium work assessed by the ALJ in light of the Plaintiff's history of long-term pain and weakness after the repair of his left clavicle in 2020, stroke in 2021, unresolved hypertension and ongoing fatigue, weakness, and emphysema.

The RFC is a measure of what an individual can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related activities includes the claimant's medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. The determination of a claimant's RFC is a legal decision rather than a medical one. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)). The ALJ must provide a narrative discussion of the record evidence and an explanation on how the evidence supports the ALJ's RFC findings. SSR 96-8p, 1996 WL 374184, at *7.

The exertional requirements of light work require lifting no more than twenty pounds at a time with frequent lifting or carrying objects weighing up to ten pounds and require a good deal of walking or standing. 20 C.F.R. § 404.1567(b). In contrast, medium work requires lifting no more than fifty pounds at a time with frequent lifting or carrying objects weighing up to twenty-five pounds. *Id.* § 404.1567(c). The lifting and carrying requirements are "the primary and relevant difference between light work and medium work." *Jarnutowski v. Kijakazi*, 48 F.4th at 774–75 (7th Cir. 2022). This is because "[b]oth light work and medium work 'require[s] standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to

meet the requirements of frequent lifting or carrying objects weighing up to' the specified amounts." *Id.* (quoting SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983)).

And an ALJ has an obligation to evaluate every medical opinion and explain the persuasiveness of the opinion. *See* 20 C.F.R. § 404.1520c(a), (b). Medical opinions are evaluated using the following factors: (1) supportability, which means how well the objective medical evidence and supporting explanations presented by a medical source support the opinion; (2) consistency, which means how consistent the medical opinion is with the evidence from other medical sources and nonmedical sources; (3) relationship with the claimant, which considers the length of a treatment relationship, the frequency of examinations, the purpose of a treatment relationship, the extent of a treatment relationship, and whether there is an examining relationship; (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the medical opinion. *Id.* § 404.1520c(c)(1)–(5). The most important factors for evaluating the persuasiveness of a medical opinion are supportability and consistency. *Id*. § 404.1520c(a), (b)(2). Therefore, the ALJ must explain how the ALJ considered those two factors in making the disability decision. *Id*. § 404.1520c(b)(2). Importantly, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7.

Here, the Plaintiff argues that the ALJ failed to properly address the consistency and supportability of Dr. Brill's February 12, 2021 opinion and misrepresented the record. In her decision, the ALJ correctly noted that Dr. Brill projected that in August 2021, twelve months after left clavicle surgery, the Plaintiff would be able to perform light work with frequent climbing of ramps/stairs, never climbing ladders/ropes/scaffolds, and occasional left front/lateral

and overhead reaching. AR 24 (citing Exs. 1A (AR 112–15), 2A (125–28)). The ALJ then found

Dr. Brill's opinion not persuasive. *Id.* The ALJ found that Dr. Brill ignored the period before

August 2021 and that the opinion was speculative and based on minimal evidence. *Id.* The ALJ

also found the assessment inconsistent with other evidence of record, noting that throughout the

primary care records, it was documented that the Plaintiff did not have difficulty walking or

climbing stairs. *Id.* (citing Exs. 15F/5 (AR 1260) (1/19/2023); 16F/2 (AR 1307) (12/13/2023);

18F/2 (AR 1332) (5/9/2024); 20F/2 (AR 1340) (10/18/2024)). And the ALJ noted that, in May

2024, the claimant's primary care provider observed normal gait, motor strength, sensation, and

movement of all extremities. *Id.* (citing Exh. 18F/1–4 (AR 1331–34)).

The Plaintiff argues that the ALJ selectively considered the notations that supported her

analysis without considering other parts of the same records consistent with an RFC for light

work. For example, at each visit cited by the ALJ on December 13, 2022, January 19, 2023, May

9, 2024, and October 18, 2024, although the Plaintiff answered "no" to questions of his primary

care provider as to whether he had difficulty walking or climbing stairs, he also answered that his

exercise level was "occasional." The ALJ did not note that, at the January 2023 visit, the Plaintiff

was being seen for chronic back pain, COPD, and hypertensive disorder. AR 1260–61. The ALJ

did not note that, at the May 2024 visit, the Plaintiff reported difficulty with balance and frequent

falls; the diagnostic assessment included recurrent falls, difficulty balancing, consider for CVA,

COPD, and hypertensive disorder; and the pain of the left shoulder joint remained listed as a

problem. AR 1332. And for the October 2024 visit, the ALJ did not note the complaints of

fatigue, dizziness, and abdominal pain along with the assessments of dizziness and aortic valve

disorder. AR 1341–42. The ALJ offers no explanation as to how the ability to walk and climb a

staircase in daily home life is inconsistent with the requirements of light work or how it supports

11

an ability to stand and/or walk six to eight hours a day while frequently carrying the twenty-five pounds and occasionally carrying the fifty pounds required of medium work. *See Beardsley*, 758 F.3d at 838 (explaining that, although an ALJ may consider a claimant's daily activities in determining disability, the ALJ must not equate those activities with the challenges of daily employment in a competitive environment (citing cases)).

For supportability, the ALJ noted that the Plaintiff acknowledged he could fish, use a riding lawnmower, drive his mother places, care for a dog, and lay flooring for his brother's business. AR 24 (citing Exs. 3E (AR 553–60), 7E (AR 578–90), 15F/3–7 (AR 1258–62), 11/4/2024 hearing (AR 42, 51)). The Plaintiff notes that fishing and driving a car were listed as hobbies on the initial function report. AR 557. He testified that he fishes the creek behind his house, drives his elderly mother, and lets his dog out by opening the door and does not take the dog out or walk her. AR 69. Again, the Court agrees with the Plaintiff that, other than the flooring, these minimal daily activities are consistent with Dr. Brill's opinion for light work and do not support the exertional requirements for medium work.

As for the ALJ's statement that the Plaintiff "acknowledged working part-time doing flooring and carrying heavy carpets," the Plaintiff argues that the statement is not supported by the full record. *See* AR 23 (citing Ex. 15F/6 (AR 1262)). The ALJ correctly cites the January 2023 medical record that the Plaintiff "does flooring and gets lots of back pain carrying heavy carpet." However, the Plaintiff testified at the November 2024 hearing that his brother had a flooring business for over thirty years and that "once in a while" (never more than one weekend a month) he would help him out but that his brother's business ended in 2019 or 2020. AR 45–47, 53. The ALJ does not discuss this contradictory testimony. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) ("Although the ALJ need not discuss every piece of evidence in

the record, [she] must confront the evidence that does not support [her] conclusion and explain why it was rejected" (citations omitted)).

In response, the Defendant reasons that activities such as operating a riding lawn mower, shopping, and driving show the Plaintiff maintained the ability to perform activities requiring "mobility." Resp. 1, 10, ECF No. 24. If by "mobility," which the Defendant does not define, the Defendant means the ability to stand and walk, it is unclear how these occasional activities demonstrate an ability to stand and/or walk six hours in an eight-hour workday with the ability to lift the fifty pounds occasionally and twenty-five pounds frequently required of medium work. The Defendant also suggests that these activities "required strength . . . beyond the lifting limitations Dr. Brill opined," Resp. 10, but again offers no evidence that fishing, driving a car, or letting a dog out the door require lifting more than the twenty pounds occasionally and ten pounds frequently required of light work.

It is unclear what evidence the ALJ relied on to determine—contrary to Dr. Brill's opinion for light work—that the Plaintiff can perform the exertional requirements of medium work. *See Michael E. v. Bisignano*, No. 25 CV 1290, 2026 WL 837161, at *5 (N.D. Ill. Mar. 26, 2026) ("The Court is unable to discern what evidence the ALJ relied on when determining, contrary to all the medical opinions in the record, that plaintiff's RFC allowed him to complete medium level exertional work with some limitations."); *Jacki D. v. Bisignano*, No. 3:25-CV-50039, 2026 WL 622666, at *2 (N.D. Ill. Mar. 5, 2026) ("Of particular importance is the ALJ's lack of discussion about lifting and carrying as 'that [is] the primary and relevant difference between light work and medium work' and the ALJ, contrary to all medical opinions in the record, found Plaintiff capable of medium work." (quoting *Jarnutowski*, 48 F.4th at 774–75)). At the hearing, the Plaintiff testified that, at his most recent work attempt building trestles, which

13

lasted only three days, he could not carry the twenty-pound nail gun all day in his dominant right hand. AR 43, 47. He testified that it is difficult to carry a gallon of milk with his right hand because of his prior right shoulder surgery in 2016. AR 50–51. He had also recently attempted to work as a car porter driving cars, which involved a lot of fast-paced walking that affected his blood pressure, but it was too physically demanding. AR 43–44.

As for the ALJ's comment that Dr. Brill's opinion was speculative because it was prospective to six months in the future, the ALJ does not cite any evidence after the August 2021 date showing a recovery commensurate with the ability to do the lifting required of medium work. In contrast, the longitudinal records cited by the Plaintiff show his ongoing treatment for left shoulder pain and regulation of his hypertension.

The Court recognizes that the ALJ discussed the Plaintiff's history of left clavicle pain and treatment. AR 22–23. The ALJ noted that the Plaintiff's primary care physician in January 2023 continued to refill pain medications upon request, even when physician examination showed no abnormal findings. AR 23 (citing Ex. 16F/4–6 (AR 1309–11)). However, while the musculoskeletal examination showed normal motor strength and tone and normal movement of all extremities, the physician included "pain of left shoulder joint" in the Plaintiff's list of problems and continued to prescribe hydrocodone. AR 1307–09. The ALJ also noted the record contains no further specialty care for shoulder pain. AR 23. However, the Plaintiff testified that the steel plates from his collarbone repair rub and bother him. AR 48. He testified that he was given the options of "take a chance taking the plates out and the bone they fused then breaking loose, or just leave the plates in and deal with it. So, yeah, left the plates in. I didn't want to go through another surgery." *Id.* He explained, "The plates always rubbing together. I mean, moving my arm, its snaps and pops. . . . I can't hardly – my arm, if I move a certain way it just pops and

14

snaps so bad that I can't hardly stand it. I mean, it almost brings me to tears. And it's a constant thing." AR 49. The ALJ did not discuss this testimony.

The Court finds that the ALJ failed to provide a good explanation for rejecting Dr. Brill's opinion for light work. Although the ALJ discussed consistency and supportability as required by the Appeals Council's remand order, that discussion is not supported by the evidence of record. The error is not harmless because an RFC for light work would direct a finding of disability pursuant to the Medical-Vocational Guidelines.

In addition, as the Plaintiff argued, by rejecting Dr. Brill's opinion for light work, the ALJ was left with an evidentiary gap with no medical opinion to support the RFC for the less limiting, more strenuous medium work. Dr. Brill opined that, upon recovery from his left shoulder surgery, the Plaintiff would be limited to lifting ten pounds frequently and twenty pounds occasionally. Without any medical expertise, the ALJ rejected the opinion and crafted an RFC for medium work, notwithstanding the Plaintiff's medical condition that changed over time, the issues with his left clavicle, his hypertensive disorder with a stroke, and his COPD.

The RFC is an administrative determination and the ALJ does not have to choose from a "menu" of opinions offered. *See* 20 C.F.R. § 404.1520c(a) (providing that, for claims filed after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"); *Thomas*, 745 F.3d at 808 (explaining that the determination of a claimant's RFC is a legal decision rather than a medical one); *Kara v. Kijakazi*, No. 20-CV-344, 2022 WL 4245022, at *2, 3 (E.D. Wis. Sept. 15, 2022) (explaining that "[t]he freedom to discount certain medical opinions is not the same as the freedom to substitute layperson opinion" but "[t]hat is not say that the ALJ had to choose from the menu

opinions provided to him"). However, when an ALJ rejects the opinions of record and the rest of the record does not support the RFC, the ALJ leaves an evidentiary deficit. *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) ("Even assuming that [the doctor'] opinions did not deserve greater weight, it is the evidentiary deficit left by the ALJ's rejection of his reports—not the decision itself—that is troubling."); *Michael B. v. Bisignano*, No. 4:24-CV-43, 2025 WL 1770747, at *3 (S.D. Ind. June 26, 2025) (recognizing that an ALJ who rejects every medical opinion in the record may create an evidentiary gap in the record that requires remand when the record contains evidence that is inconsistent with the RFC assessment); *Kara*, 2022 WL 4245022, at *2–3 (explaining that when the ALJ's rejection of medical opinions and prior administrative medical findings "results in a complete absence of valid expert opinions, the ALJ should summon a medical expert who can review the record and offer an opinion grounded in the evidence" (citing *Jennifer B. v. Saul*, No. 1:19-CV-347, 2020 WL 2520996, at *8 (N.D. Ind. May 18, 2020))).

The Defendant argues that, because the Plaintiff was represented by counsel at the hearing, an ALJ is free to assume that the Plaintiff presented his strongest case for benefits. *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010). However, it is unclear why the Plaintiff or his counsel would have thought it necessary to request an additional opinion given that Dr. Brill assessed an RFC for light work, which would have resulted in a finding of disability under the Medical-Vocational Guidelines. Here, unlike the cases cited by the Defendant, the ALJ assessed an RFC with *less* limitations (medium work) than the RFC opined by the state agency reviewing physician Dr. Brill (light work). All the cases cited by the Defendant concerned an ALJ rejecting a state agency reviewing physician's opinion and then providing an RFC with *greater* limitations. *See id.* (noting that the plaintiff, acting through

counsel, "knew already in 2005 that the state-agency consultants did not think that J.H. was disabled"); *Vivian M. v. Kijakazi*, No. 1:21-CV-686, 2022 WL 4298264, at *4 (S.D. Ind. Sept. 16, 2022) (finding that the plaintiff, who was represented by counsel, had the duty to seek a medical opinion of her treating sources where the state agency consultant found she had no mental impairment); *Guerra v. Comm'r of Soc. Sec.*, No. 1:15-CV-224, 2016 WL 6818878, at *9 (N.D. Ind. Nov. 18, 2016) (finding no error when the ALJ did not call a medical expert where the ALJ assigned an RFC that was more conservative than the state agency opinions); *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) ("In the end, then, this appeal amounts to a failure of proof on Karr's part. She had every opportunity to present evidence aligning with and reinforcing Dr. Canavati's statement, but she did not do so.").

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 16] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion.

SO ORDERED on April 20, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

17